# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 15-3253 JB

JUANITA ROIBAL-BRADLEY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for an Enlargement of Time to File an Appeal, filed April 24, 2017 (Doc. 101)("Motion"). The Court held a hearing on May 8, 2017. The primary issue is whether the Court, pursuant to rule 4(b)(4) of the Federal Rules of Appellate Procedure, should grant Defendant Juanita Roibal-Bradley a ten-day extension to file a notice of appeal from the Court's Judgment, filed March 8, 2017 (Doc. 95)("Judgment"). The Court concludes that Roibal-Bradley has not demonstrated excusable neglect or good cause to extend the deadline. Accordingly, the Court declines to grant the requested extension.

## FACTUAL BACKGROUND

In a Plea Agreement, filed February 2, 2016 (Doc. 29)("Plea Agreement"), Roibal-Bradley admitted the following facts. With respect to Count I of the Indictment, filed September 10, 2015 (Doc. 1)("Indictment"), which charges Roibal-Bradley with fraudulently receiving Social Security Disability Insurance Benefits to which she was not entitled, in violation of 42 U.S.C. § 408(a)(4)(1), see Indictment ¶¶ 1-2, at 1-2, Roibal-Bradley admits:

> Between on or about September 18, 2007, and continuing through on or about March 23, 2011, in the District of New Mexico and elsewhere, I had knowledge of an event affecting my initial and continuing right to any payment of Social Security Disability Insurance Benefits, and I knowingly failed to disclose this event to the Social

Security Administration, with the intent to fraudulently secure payment in a greater amount than was due and when no payment was authorized. . . .

On or about September 18, 2007, I submitted an application to the Social Security Administration for Disability Insurance Payments. As part of the application process, I claimed that my disability prevented me from engaging in any work. Based on my representations that I was not capable of gainful employment, on March 25, 2008, the Social Security Administration began paying me disability benefits, and continued to pay me such benefits until March 23, 2011. During the entire time I was receiving Social Security Disability Insurance Payments, I was working full-time as a mediator or supervising attorney at the New Mexico Worker's Compensation Administration and I did conceal and fail to disclose to the Social Security Administration that I was capable of such full-time, gainful employment.

As a result of my failure to disclose to the Social Security Administration my ability to engage in full-time work, I fraudulently received Social Security Disability Insurance Benefits to which I was not entitled, in an amount in excess of $40,000.

Plea Agreement ¶¶ 9.a-9.c, at 4-5 (paragraph numbering omitted). Regarding the Indictment's Counts II through XIII, which charge Roibal-Bradley with devising and executing a wire fraud scheme and artifice to defraud the Estate of Joseph King Swezey Sr. of more than $250,000.00, in violation of 18 U.S.C. § 1343, see Indictment ¶¶ 1-7, at 2-4, Roibal-Bradley admits:

Between or about March 19, 2012, and on or about June 30, 2013, in the District of New Mexico and elsewhere, I knowingly and with intent to defraud devised and executed a scheme and artifice to defraud individuals and the Estate of J.S., and to obtain money from individuals and the Estate of J.S. by false and fraudulent pretenses, representations, and promises, and, for the purpose of executing my scheme and artifice, caused writings and signals to be transmitted in interstate commerce via wire. . . .

On March 19, 2012, J.S. passed away. One of J.S.'s daughters was named administrator of his estate. In addition to the administrator, J.S. was survived by another daughter and a son. J.S.'s estate was worth at least $850,000 and was to be split equally among his three children. Instead, I devised and executed a wire fraud scheme and artifice wherein I defrauded the Estate of J.S. of an amount in excess of $250,000.

The administrator knew that I had been a licensed attorney in New Mexico. The administrator did not know that I was not permitted to practice law, having been suspended from the practice of law by the New Mexico Supreme Court, and specifically ordered to "not engage in the private practice of law nor accept any fees for legal services whatsoever."

I did not tell the administrator that I was not allowed to be a lawyer and I held myself out as an attorney to the administrator. I prepared an attorney engagement agreement on the letterhead I used when I was authorized to practice law, "Juanita Roibal Law Offices," and I had the administrator sign that agreement. Under the terms of that agreement, I was to provide legal services to the Estate of J.S., including locating and distributing the estate's assets.

I did participate in locating the assets of the Estate of J.S. The administrator received the assets her father had left to her.

In executing my scheme and artifice to defraud, I had the administrator transfer in interstate commerce by wire the remaining assets of the Estate of J.S. from financial institutions located outside of New Mexico to a personal account I held at U.S. New Mexico Federal Credit Union in New Mexico. In all, between April 18, 2012, and August 15, 2012, I had the administrator deposit into my personal account 11 wire transfers totaling $571,948.98. The administrator wire transferred the estate's assets to me based on my representations that I, in my purported role as attorney for the estate, would distribute the fund to J.S.'s rightful heirs, the administrator's brother and sister.

I did distribute some of the estate's assets to the administrator's sister and brother but instead of distributing the rest of the estate's assets to their rightful owners, the administrator's brother and sister, I withdrew some of the estate's assets from my credit union account for my personal use. In all, I stole in excess of $250,000 from the estate and its heirs. . . .

On or about the following dates in 2012: April 18, April 27, May 3, May 10, May 11, June 20, June 26, July 6, July 20, July 23, and August 15, I executed my scheme and artifice by knowingly and with intent to defraud, causing the administrator of the Estate of J.S. to transfer in interstate commerce by wire $571,948.98 of the estate's assets from financial institutions located outside of New Mexico to my personal accounts at U.S. New Mexico Federal Credit Union in New Mexico. Instead of distributing those assets to the estate's rightful heirs, I defrauded the estate of an amount in excess of $250,000 and put those stolen assets to my own use.

Additionally, on or about June 7, 2013, I engaged in a telephone conversation, via interstate wire, with J.S.'s son, during which I attempted to deter the son from alerting authorities or taking legal action by falsely claiming I was entitled to invest the funds, that I had invested the funds, and that I would distribute the funds as requested.

Plea Agreement ¶¶ 9.d-9.l, at 5-7 (paragraph numbering omitted).

# PROCEDURAL BACKGROUND

On September 10, 2015, a grand jury returned a twenty-three count indictment against Roibal-Bradley. <u>See</u> Indictment at 1-8. Count I charges Roibal-Bradley with fraudulently receiving Social Security Disability Insurance Benefits to which she was not entitled, in violation of 42 U.S.C. § 408(a)(4)(1). <u>See</u> Indictment ¶¶ 1-2, at 1-2. Counts II through XIII charge Roibal-Bradley with devising and executing a wire fraud scheme and artifice to defraud the Estate of Joseph King Swezey Sr. of over $250,000.00, in violation of 18 U.S.C. § 1343. <u>See</u> Indictment ¶¶ 1-7, at 2-4. Counts XIV through XXIII charge Roibal-Bradley with knowingly engaging in a series of monetary transactions in property criminally derived from wire fraud worth more than $10,000.00, in violation of 18 U.S.C. § 1957. <u>See</u> Indictment ¶ 1, at 4-5. On February 2, 2016, pursuant to a plea agreement, Roibal-Bradley entered guilty pleas to Counts I through XIII. <u>See</u> Plea Agreement at 1-11. In the Plea Agreement, the parties stipulated to a sentencing range of 0 to 39 months imprisonment, <u>see</u> Plea Agreement ¶ 11, at 7-8, and Roibal-Bradley waived her rights to appeal, or collaterally attack, her convictions or sentence, <u>see</u> Plea Agreement ¶ 14, at 9. The Court accepted the Plea Agreement on September 12, 2016, and sentenced Roibal-Bradley to 37 months imprisonment as to each count of conviction, to run concurrently. <u>See</u> Sentencing Minute Sheet at 1, filed September 12, 2016 (Doc. 55).

On October 17, 2016, Jason Bowles, counsel for Roibal-Bradley since September 21, 2015, moved to withdraw as her counsel. <u>See</u> *Sealed* Motion to Withdraw as Counsel for Defendant at 1, filed October 12, 2016 (Doc. 60). The Court granted the motion on November 2, 2016, and directed the Clerk of the Court to appoint CJA counsel for Roibal-Bradley. <u>See</u> Order Allowing Withdrawal of Counsel at 1, filed November 2, 2016 (Doc. 74)("Withdrawal Order"). That same day, Barrett Porter was appointed to represent Roibal-Bradley. <u>See</u> CJA Appointment of Attorney Barrett

(Barry) George Porter for Juanita Roibal-Bradley, filed November 2, 2016 (Doc. 75)(text-only-entry)("Appointment Order").

On March 8, 2017, the Court entered judgment, sentencing Roibal-Bradley to concurrent 37-month terms of imprisonment as to each of Counts I through XIII, dismissing Counts XIV through XXIII, and ordering restitution in the amount of $128,744.35. See Judgment at 1-6. On March 14, 2017, pursuant to rule 36 of the Federal Rules of Criminal Procedure, the Court entered an amended judgment to correct a clerical error in the restitution it ordered. See Amended Judgment at 1-6, filed March 14, 2017 (Doc. 96)("Amended Judgment"). In the Amended Judgment, the Court ordered restitution in the amount of $128,771.35 -- a difference of $27.00. See Amended Judgment at 6.

Roibal-Bradley filed a notice of appeal from the Court's Amended Judgment on March 28, 2017. See Notice of Appeal at 1, filed March 28, 2017 (Doc. 97). On April 18, 2017, the Tenth Circuit panel assigned to review the matter issued an order partially remanding the case. See United States v. Roibal-Bradley, No. 17-2042, Order, filed April 18, 2017 (10th Cir. Doc. 01019796780) (D.N.M. Doc. 100)("Tenth Circuit Order"). The panel concludes that Roibal-Bradley's appeal is untimely under rule 4(b)(1)(A) of the Federal Rules of Appellate Procedure, because she filed her notice of appeal more than 14 days after the Court entered Judgment on March 8, 2017. See Tenth Circuit Order at 1 (citing United States v. Portillo, 363 F.3d 1161, 1165 & n.6 (11th Cir. 2004); United States v. Lewis, 921 F.2d 563, 565 (5th Cir. 1991)). The panel notes, however, that, although the appeal is untimely, "it was filed within the 30-day extension period the district court is authorized to grant under Fed. R. App. P. 4(b)(4) upon a finding of excusable neglect or good cause." Tenth Circuit Order at 2 (citing United States v. Espinosa-Talamantes, 319 F.3d 1245, 1246 (10th Cir. 2003)). The panel therefore remands the case for the Court to "decide whether to grant Ms. Roibal-Bradley an extension of time to appeal." Tenth Circuit Order at 2.

1.      **The Motion for Extension of Time to Appeal**.

Roibal-Bradley moved the Court for an extension of time to file an appeal on April 24, 2017.

<u>See</u> Motion at 1. The Motion notes that, after Mr. Porter was appointed Roibal-Bradley's counsel,

they had "no discussion . . . regarding challenging the sentence or the application of the sentencing

guidelines." Motion ¶ 8, at 2. The Motion explains that Roibal-Bradley "notified counsel for the

first time of her desire to appeal her sentence" upon her receipt of the Amended Judgment on March

27, 2017. Motion ¶ 9, at 2. The Motion notes that "[t]his was six days after the date the government

argues was the correct date for filing of the Notice of Appeal," Motion ¶ 9, at 2, but contends that, in

light of "the unusual nature of the proceedings in this matter, [] the nature of the[]representation

counsel was appointed to undertake, and the late notice of Ms. Roibal-Bradley's desire to appeal her

sentence, it is understandable that the Notice of Appeal . . . wasn't filed until March 28, 2017,"

Motion ¶ 10, at 2.

Turning to its legal argument, the Motion states that rule 4 permits the district court to extend

the time to file a notice of appeal upon a "finding of excusable neglect or good cause . . . ." Motion

¶ 11, at 2. The Motion contends that "[t]he Supreme Court has ruled that the court may permit late

filings of a notice of appeal, where appropriate, caused by inadvertence, mistake or carelessness, as

well as by intervening circumstances beyond the party's control." Motion ¶ 12, at 2 (citing <u>Pioneer</u>

<u>Inv. Servs. v. Brunswick Assocs. Ltd. P'ship</u>, 507 U.S. 380 (1993)("<u>Pioneer</u>")). The Motion avers

that whether a "party's neglect is excusable is ultimately an equitable determination, taking into

account all of the relevant circumstances surrounding the omission." Motion ¶ 13, at 2-3 (citing

<u>Pioneer</u>, 507 U.S. at 395). The relevant circumstances, the Motion contends, are (i) "the danger of

prejudice to the nonmoving party"; (ii) "the length of the delay and its potential impact on judicial

proceedings"; (iii) "the reason for the delay, including whether it was within the reasonable control

of the movant"; and (iv) "whether the movant acted in good faith."  Motion ¶ 13, at 3 (citing <u>Pioneer</u>,

507 U.S. at 395).  Applying these factors, the Motion avers that "what occurred in this matter is

excusable neglect," because "[t]here is no danger of prejudice to the government in letting the appeal

go forward"; "[t]he length of the delay for the filing of the notice of appeal is a few days"; "[t]he

reason for the delay is confusion enhanced by the limited nature of the representation assignment and

the proceedings in this matter"; and "[t]he movant is acting in good faith."  Motion ¶ 14, at 3.  The

Motion accordingly requests that the Court "find excusable neglect and grant [Roibal-Bradley] a

nunc pro tunc, 10-day extension of time within which to file her notice of appeal in this matter."

Motion ¶ 16, at 3.

> ## 2. <u>The United States' Response</u>.

The United States responded to the Motion on May 2, 2017.  <u>See</u> United States' Response to

Defendant's Motion for an Enlargement of Time to File an Appeal at 1, filed May 2, 2017 (Doc.

105)("Response").  The United States argues that the Court should deny the Motion, because Roibal-

Bradley "fails to establish either good cause or excusable neglect."  Response at 2.  First, the United

States avers that "[g]ood cause comes into play in situations in which there is no fault -- excusable or

otherwise," and asserts that an extension in such situations "is usually occasioned by something that

is not within the control of the movant."  Response at 2-3 (quoting <u>Bishop v. Corsentino</u>, 371 F.3d

1203, 1206-07 (10th Cir. 2004))(internal quotation marks omitted).  Here, the United States argues,

"'good cause' is not at issue," because Roibal-Bradley "makes no claim that her late filing resulted

from an occurrence beyond her control."  Response at 3.

Second, the United States contends that "[e]xcusable neglect . . . is implicated when a late-

filing results from 'inadvertence, mistake, or carelessness . . . .'"  Response at 3 (quoting <u>Pioneer</u>,

507 U.S. at 388).  The United States reiterates the four <u>Pioneer</u> factors that Roibal-Bradley lists in

her Motion, but contends that "'the excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules.'" Response at 3 (quoting United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004)). Here, the United States acknowledges, "[s]ome of the excusable neglect factors may favor Defendant," i.e., the "danger of prejudice to the United States is not great," and the "length of delay was minimal and will not significantly impact judicial proceedings." Response at 3. The United States argues, however, that "the most critical factor -- fault -- weighs heavily against Defendant and demands the denial of her motion." Response at 3 (citing United States v. Torres, 372 F.3d at 1163). The United States supports this argument by refuting the Motion's asserted reasons for the delay, including the "confusion" that (i) "the filing of the amended judgment" and (ii) Roibal-Bradley's "change in representation" caused. Response at 3.

With respect to the Court's Amended Judgment, the United States avers that the "law clearly states that a judgment amended to correct purely clerical errors does not extend an appeal deadline." Response at 4 (citing Tenth Circuit Order at 1-2). The United States asserts that Roibal-Bradley's "failure to comprehend this unambiguous law does not amount to excusable neglect." Response at 4. The United States notes that, despite Roibal-Bradley being a "trained lawyer," she failed to research the applicable law or confer with her counsel about the law. Response at 4. The United States avers, moreover, that Roibal-Bradley's "untimely notice of appeal is not an isolated missed deadline in this case." Response at 4 (citing Amended Motion to Withdraw Plea Due to Mental Incapacity, filed October 13, 2016 (Doc. 61), which, the United States argues, was untimely "filed over eight months after Defendant pleaded guilty and over one month after imposition of sentence"). The United States contends that, given Roibal-Bradley's "prior struggles complying with filing deadlines," she "should have been well-aware of the need to confirm the deadline for her notice of appeal." Response at 4-5.

Regarding the "change in representation," the United States contends that, pursuant to "the unambiguous and readily accessible rules governing CJA appointments, 'once counsel is appointed . . . , counsel shall continue representation until the matter, including appeals or review by certiorari . . . is closed.'" Response at 5 (brackets and emphasis omitted)(quoting Judicial Council of the Tenth Circuit, In the Matter of: Plan for Appointment of Counsel and Other Services Pursuant to the Criminal Justice Act of 1964, as Amended, 2015, MC No. 15-0004, Order Adopting CJA Plan ¶ 7(d), at 23-24, filed May 28, 2015 (D.N.M. Doc. 27)("CJA Plan")). The United States asserts that, here, the Court "did not impose any limitation on CJA counsel's representation of Defendant when directing such appointment." Response at 5. In the United States' view, "[o]ther than simply failing to understand the rules, Defendant has offered no reasoning for why she would believe there was some limitation on counsel's representation." Response at 5. Thus, the United States contends, absent a "compelling explanation" for why "CJA counsel's representation was uniquely circumscribed in this matter, the change in Defendant's representation does not create good cause or excusable neglect for filing a late notice of appeal." Response at 5.

### 3. **The Hearing.**

The Court held a hearing on the Motion on May 8, 2017. See Transcript of Motion Hearing (taken May 8, 2017)("Tr.").[1] The Court began by noting that the Plea Agreement includes a waiver of Roibal-Bradley's rights to appeal, or collaterally attack, her conviction or sentence. See Tr. at 2:13-3:2 (Court). The Court noted that the Tenth Circuit strictly enforces such waivers, and asked why Roibal-Bradley "want[s] to appeal . . . ." Tr. at 3:2-10 (Court). Susan Burgess, co-counsel for Roibal-Bradley, responded that she believes Roibal-Bradley intends to allege ineffective assistance

---

[1]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

of counsel on appeal.  See Tr. at 3:16-20 (Burgess).  Ms. Burgess noted that Roibal-Bradley has been

moved between numerous detention centers, and that, after Roibal-Bradley's transfer to Torrance

County Detention Facility, "things settled down, and she was more able to reach out to counsel" and

express her desire to appeal the Court's restitution order.  Tr. at 3:23-4:10 (Burgess).  Ms. Burgess

stated that, in her view, Roibal-Bradley "has a right to appeal" the restitution order.  Tr. at 4:10-14

(Burgess).  Ms. Burgess then briefly reiterated the Motion's arguments regarding excusable neglect

under the four Pioneer factors.  See Tr. at 4:15-5:1 (Burgess).

    The Court queried whether Roibal-Bradley ever "asked [] to file an appeal until after the time

for doing so had run[.]"  Tr. at 5:5-10 (Court).  Ms. Burgess asserted that Roibal-Bradley "had asked

general questions about appeal" as to the ineffective-assistance-of-counsel issue, but admitted that

"[t]he specific issue of appealing the sentencing and decisions of this Court were not raised until the

27th[.]"  Tr. at 5:11-15 (Burgess).  Ms. Burgess explained that "there was confusion because of the

two different judgments" and reiterated that Roibal-Bradley had difficulty communicating from the

numerous facilities in which she was incarcerated.  Tr. at 6:6-15 (Burgess).

    The Court then directed the United States to argue.  See Tr. at 7:7-8 (Court).  The United

States began by arguing that "the reasoning for the delay has changed over time," noting that the

Motion relies on "confusion surrounding the amended judgment and the substitution of counsel."

Tr. at 7:9-14 (Kastrin).  The United States said that "just being confused . . . is not enough for either

good cause or excusable neglect."  Tr. at 7:16-20 (Kastrin).  Indeed, the United States posited, "[t]he

law and the rules were clear and easily verifiable concerning Ms. Roibal-Bradley's appeal deadline,

as well as the scope of her CJA appointed counsel's representation."  Tr. at 7:20-23 (Kastrin).  The

United States added that, "[e]ven if no attorney discussed [the appeal deadline] with her, the Court

told her [about the deadline] at her sentencing."  Tr. at 7:25-8:4 (Kastrin).  Further, the United States

contended, "the law concerning good cause and excusable neglect requires her to undertake some minimal effort to understand the law, and not just rely on what she hopes to be true." Tr. at 8:8-12 (Kastrin). The United States asserted that, in her conversations with her CJA-appointed counsel about ineffective assistance, Roibal-Bradley could have discussed the law regarding timely appeals. See Tr. at 8:16-22 (Kastrin). Indeed, the United States posited, the fact that Roibal-Bradley had such conversations with counsel before she decided to appeal "undermines the newer claim that the delay was occasioned by difficulties in access to communicat[e] in jail." Tr. at 9:5-11 (Kastrin). See id. at 9:11-17 (Kastrin)("[S]he had time to discuss with counsel the ability to appeal on time within the 14 days . . . . It was only after that passed that she brought it up for the first time."). The United States asserted that, ultimately, "simple confusion without any minimal effort to confirm the confusion as to the case law does not amount to good cause." Tr. at 9:18-22 (Kastrin).

Pivoting to the Plea Agreement's waiver of appeal rights, the United States noted that, "if this moves ahead," it intends "to enforce the appeal waiver, . . . and this whole thing will be mooted." Tr. at 10:16-19 (Kastrin). The United States contended that it does not believe Roibal-Bradley "can appeal restitution in this case under the terms of her appeal waiver." Tr. at 10:19-23 (Kastrin). The United States noted, however, that, at this stage, it has raised only the timeliness issue, because it is "the first thing that would need to be brought up with the Tenth Circuit to preserve that argument." Tr. at 10:12-16 (Kastrin).

Returning to Ms. Burgess, the Court speculated that Roibal-Bradley did not intend to appeal the Court's original Judgment. See Tr. at 11:20-21 (Court). The Court reasoned that "there was no way that anybody knew that the Court was going to be filing an amended judgment," and that "[s]he let that time run, and then she must have tried to then use the amended judgment to appeal." Tr. at 11:18-23 (Court). Ms. Burgess conceded this reasoning. See Tr. at 12:1-3 (Burgess). Ms. Burgess

then reiterated that Roibal-Bradley wishes to appeal the Court's restitution order, and added that Roibal-Bradley "also has issues with [] how the sentencing guidelines were applied to her" Tr. at 12:24-25 (Burgess), namely "how the amount of the loss was calculated and assessed," Tr. at 13:4-7 (Burgess).

Roibal-Bradley then spoke briefly on her own behalf. See Tr. at 14:4-13 (Roibal-Bradley). As to the timeliness issue, Roibal-Bradley asserted that she "kept checking with the Court about the 14 days," but that she "never got a copy of that first order." Tr. at 14:4-7 (Roibal-Bradley). Roibal-Bradley explained that she "did not get it within a timely basis," because she "was incarcerated." Tr. at 14:7-9 (Roibal-Bradley). Roibal-Bradley queried how she could comply with the fourteen-day deadline when she was "moved around" or "on lockdown." Tr. at 14:11-12 (Roibal-Bradley).

The Court then gave the United States the final word on the Motion. See Tr. at 14:20-21 (Court). Replying to Roibal-Bradley's statements, the United States noted that "[m]any defendants are incarcerated at the time that a judgment is imposed." Tr. at 14:23-25 (Kastrin). Moreover, the United States noted its agreement with the Court's speculation that Roibal-Bradley did not intend to appeal the original Judgment and that "this appears to have been . . . a last minute decision that just happened to be untimely." Tr. at 15:1-9 (Kastrin). The United States posited that "Roibal-Bradley seems to have a systematic belief that she doesn't have to be held to the same rules as any other" defendant. Tr. at 15:14-18 (Kastrin).

The Court closed the hearing by stating its inclination to deny the Motion. See Tr. at 16:13 (Court). The Court noted that these facts do not appear to support a finding of good cause to miss the deadline. See Tr. at 16:13-17 (Court). The Court noted that defendants frequently are "moved around pretty quickly after a sentencing" and reiterated its suspicion that Roibal-Bradley decided to appeal the Court's Judgment at the last minute. Tr. at 16:15-23 (Court).

## RELEVANT LAW REGARDING MOTIONS FOR AN EXTENSION
## OF TIME TO FILE AN APPEAL IN A CRIMINAL CASE

Parties seeking to appeal a district court's final judgment or order must file a notice of appeal with the district clerk within the time that rule 4 of the Federal Rules of Appellate Procedure allows. See Fed. R. App. P. 3(a)(1). Rule 4(b) states that, in a criminal case, a defendant's notice of appeal must be filed in the district court within fourteen days after entry of the judgment or order appealed. See Fed. R. App. P. 4(b)(1)(A)(i). The United States must file its notice of appeal, when authorized, in the district court within thirty days after entry of the judgment or order appealed. See Fed. R. App. P. (4)(b)(1)(B)(i). In the Tenth Circuit, these requirements were "long considered 'mandatory and jurisdictional.'" United States v. Mitchell, 518 F.3d 740, 743-44 (10th Cir. 2008) (citations omitted). In 2007, however, the Supreme Court clarified that court-adopted procedural rules not derived from statutes are not jurisdictional, but rather inflexible "claim-processing" rules. Bowles v. Russell, 551 U.S. 205, 209-13 (2007). In light of this clarification, the Tenth Circuit has held that, in criminal appeals that a defendant files, rule 4(b)(1)(A) is an "'inflexible claim-processing rule,' which, unlike a jurisdictional rule, may be forfeited if not properly raised by the government." United States v. Garduño, 506 F.3d 1287, 1288-89 (10th Cir. 2007). See United States v. Mitchell, 518 F.3d at 744 ("[T]he time bar in Rule 4(b) must be enforced . . . when properly invoked by the government."). In the United States' criminal appeals, however, rule 4(b)(1)(B)'s time limits are statutory-based and are therefore jurisdictional. See In re Grand Jury Proceedings, 616 F.3d 1186, 1195-96 (10th Cir. 2010)(referencing 18 U.S.C. § 3731).

Under rule 4(b)(4), if the district court finds "excusable neglect or good cause," it may extend the time to file a notice of appeal up to thirty days after the original deadline's expiration. Fed. R. App. P. 4(b)(4). The excusable-neglect determination is an "equitable one," requiring that the court "tak[e] account of all relevant circumstances surrounding the party's omission." Pioneer, 507 U.S.

at 395 (footnote omitted)(interpreting "excusable neglect" in the bankruptcy context).  <u>See United States v. Torres</u>, 372 F.3d at 1160-64 (applying <u>Pioneer</u> in the rule 4(b) context).  The court must consider: (i) "the danger of unfair prejudice to the nonmoving party"; (ii) "the length of the delay and its potential impact on judicial proceedings"; (iii) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (iv) "whether the movant acted in good faith." <u>United States v. Vogl</u>, 374 F.3d 976, 981 (10th Cir. 2004)(citing <u>United States v. Torres</u>, 372 F.3d at 1162).  <u>See United States v. Munoz</u>, 664 F. App'x 713, 715 (10th Cir. 2016)(unpublished)(listing the same factors).  The Tenth Circuit has stressed that "fault in the delay remains a very important factor -- perhaps the most important single factor in determining whether neglect is excusable."  <u>United States v. Torres</u>, 372 F.3d at 1163 (quoting <u>City of Chanute v. Williams Nat. Gas Co.</u>, 31 F.3d 1041, 1046 (10th Cir. 1994))(internal quotation marks omitted).  Still, excusable neglect "is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant."  <u>Pioneer</u>, 507 U.S. at 392 (footnotes omitted).

In <u>United States v. Torres</u>, the Tenth Circuit applied these factors and held that the district court abused its discretion in finding excusable neglect where the defendant filed his notice of appeal eighteen days after the court's entry of judgment.  <u>See</u> 372 F.3d at 1162.  The Tenth Circuit noted that three factors favored an excusable-neglect finding: "Defendant filed his notice of appeal only 18 days after the entry of judgment; it does not appear that the government would be prejudiced by the delay if Defendant's appeal is permitted to proceed; and there is no indication that defense counsel acted in bad faith."  372 F.3d at 1163.  The Tenth Circuit noted, however, that the reason for the delay "was simply that defense counsel confused the filing deadlines for civil and criminal appeals." 372 F.3d at 1163.  The Tenth Circuit concluded that this "misinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief unless 'the word "excusable" is to be read out of the

rule.'" 372 F.3d at 1163 (brackets omitted)(quoting <u>Prizevoits v. Indiana Bell Tel. Co.</u>, 76 F.3d 132, 134 (7th Cir. 1996)). The Tenth Circuit therefore held that it lacked jurisdiction over the defendant's appeals. <u>See</u> <u>United States v. Torres</u>, 372 F.3d at 1164.

The district court may also extend the time to file a notice of appeal upon a finding of "good cause." Fed. R. App. P. 4(b)(4). The Tenth Circuit has stated that the "concept of good cause 'takes account of a narrow class of cases in which a traditional 'excusable neglect' analysis would be inapposite.'" <u>Bishop v. Corsentino</u>, 371 F.3d at 1207 (brackets omitted)(quoting <u>Mirpuri v. ACT Mfg., Inc.</u>, 212 F.3d 624, 630 (1st Cir. 2000)). "Good cause may warrant an extension when the defendant demonstrates an untimely filing resulted from a 'situation[] in which there is no fault -- excusable or otherwise.'" <u>United States v. Munoz</u>, 664 F. App'x at 715 (quoting <u>Bishop v. Corsentino</u>, 371 F.3d at 1207). "In such situations, the need for an extension is usually occasioned by something that is not within the control of the movant." <u>United States v. Torres</u>, 372 F.3d at 1161 n.1 (quoting <u>Bishop v. Corsentino</u>, 371 F.3d at 1207). <u>See</u> <u>Mirpuri v. ACT Mfg., Inc.</u>, 212 F.3d at 630 ("[W]here there are no forces beyond the control of the would-be appellant that prevent him from taking timely steps to preserve his rights, 'good cause' has no applicability . . . .").

In <u>United States v. Munoz</u>, the Tenth Circuit upheld the district court's denial of an extension motion where the defendant failed to demonstrate good cause for filing a notice of appeal seven days after rule 4(b)(1)(A)(i)'s fourteen-day filing period expired. <u>See</u> 664 F. App'x at 714. On February 22, 2016, the district court issued an order sentencing the defendant to 168 months imprisonment for possession of methamphetamine with intent to distribute, giving the defendant until March 7, 2016, to file a notice of appeal. <u>See</u> 664 F. App'x at 715. The defendant filed his notice of appeal on March 14, 2016, and later moved for an extension of time pursuant to rule 4(b)(4), arguing that he did not receive the district court's February 22, 2016, order until March 4, 2016, and asserting that

he had difficulty working on his appeal, because he had to pack and unpack his legal paperwork to prepare for a transfer to another prison facility scheduled for March 7, 2016. <u>See</u> 664 F. App'x at 716. The district court noted that the defendant had "less than three days to prepare and mail a timely notice of appeal," but concluded that, "even though Munoz couldn't control the vagaries of prison mail deliveries or inter-facility transfers, Munoz didn't demonstrate good cause for failing to prepare and mail a one-page notice of appeal over the course of three days." 664 F. App'x at 716. On appeal, the Tenth Circuit found "no abuse of discretion" in this analysis and affirmed the district court's denial of the defendant's extension motion. 664 F. App'x at 716.

The Tenth Circuit has held "'that a defendant who filed his notice of appeal within the Rule 4(b) thirty-day extension period may obtain relief by showing excusable neglect notwithstanding his failure to file a motion seeking such relief within that same time frame.'" <u>United States v. Espinosa-Talamantes</u>, 319 F.3d at 1246 (quoting <u>United States v. McMillan</u>, 106 F.3d 322, 324 (10th Cir. 1997)). By the same logic, the Tenth Circuit has held that an extension motion filed within rule 4(b)(4)'s thirty-day extension period is timely, despite that the movant "filed a formal notice of appeal outside the extension period." <u>United States v. Powell</u>, 663 F. App'x 616, 618 (10th Cir. 2016)(unpublished). <u>See</u> <u>United States v. Dotz</u>, 455 F.3d 644, 647 (6th Cir. 2006)("[A] district court has the discretion to consider a motion to extend the time for appeal beyond the [fourteen]-day deadline if and only if it is filed within the 30 days after the [fourteen]-day deadline, or [forty-four] days from the date of entry of judgment.")(emphasis and internal quotation marks omitted). In such circumstances, it "makes sense to construe a Rule 4(b)(4) motion as a notice of appeal if no formal notice was filed within the permissible extension period, so long as the motion is the substantial equivalent of a notice of appeal." 16A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3950.9 (4th ed. 2008). <u>See</u> <u>United States v. Smith</u>, 182 F.3d 733, 734-35 (10th Cir.

1999)(treating an appeal as timely where the appellant's notice of appeal was filed outside the thirty-day extension period, but where the appellant's extension motion was filed within that period and was the "functional equivalent of a notice of appeal").

### LAW REGARDING GOOD CAUSE AND EXCUSABLE NEGLECT

The Tenth Circuit has "recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(Rushfelt, J.)(citing In re Kirkland, 86 F.3d 172, 175 (10th Cir. 1996)). In In re Kirkland, the Tenth Circuit dealt with the definition of "good cause" in the context of a predecessor to modern rule 4(m) of the Federal Rules of Civil Procedure,[2] and noted:

> [W]ithout attempting a rigid or all-encompassing definition of 'good cause,' it would appear to require <u>at least as much</u> as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of 'good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

86 F.3d at 175 (emphasis in original)(quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987))(internal quotation marks omitted). The Tenth Circuit explained that Putnam v. Morris "thus

---

[2]Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court -- on motion or on its own after notice to the plaintiff -- must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f) or 4(j)(1).

Fed. R. Civ. P. 4(m). In In re Kirkland, the Tenth Circuit in interpreted rule 4(j), which was largely identical. See 86 F.3d at 174 ("Rule 4(j) requires the court to dismiss a proceeding if service has not been made upon the defendant within 120 days after filing and the party responsible for service cannot show good cause why it was not made.").

recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  In re Kirkland, 86 F.3d at 175.

In general, the phrases "good cause" and "excusable neglect" are assumed to have the same meaning in various statutory contexts.  Courts generally presume that a drafter of a statute intends identical language in statutes with similar purposes to have the same meaning.  See Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 547 U.S. 71, 85-86 (2006)(Stevens, J.).  Moreover, "[t]he rules of statutory construction apply to the Federal Rules."  In re Kubler, 2012 WL 394680, at *11 (D.N.M. 2012)(Browning, J.).  Accord Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)(applying the expressio unius est exclusio alterius canon to interpret rule 9(b) of the Federal Rules of Civil Procedure); Hillis v. Heineman, 626 F.3d 1014, 1017-18 (9th Cir. 2010)("This same principle of statutory construction applies to interpreting the Federal Rules of Civil Procedure.").  The Court, for example, has relied upon the meaning of "good cause" under rule 16 of the Federal Rules of Civil Procedure -- which concerns amendments of scheduling orders -- when interpreting "good cause" under rule 32 of the Federal Rules of Criminal Procedure -- which concerns criminal sentencing and judgment.  United States v. Jones, 2016 U.S. Dist. LEXIS 9938, at *8-11 (D.N.M. 2016)(Browning, J.).

In the civil rule 16 context, the Court has stated that the good-cause inquiry focuses on the diligence of the party seeking to amend a scheduling deadline.  See Walker v. THI of N.M. at Hobbs Ctr., 262 F.R.D. 599, 602-03 (D.N.M. 2009)(Browning, J.); Guidance Endodontics, LLC v. Dentsply Int'l, Inc., 2009 WL 3672505, at *2-3 (D.N.M. 2009)(Browning, J.); Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs., 2007 WL 2296955, at *3 (D.N.M. 2007)(Browning, J.).  The Court has concluded that, "[p]roperly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Advanced Optics Elecs., Inc. v. Robins, 769 F. Supp. 2d 1285,

1313 (D.N.M. 2010)(Browning, J.).  Accord Gerald v. Locksley, 2011 WL 3510845, at *13-14 (D.N.M. 2011)(Browning, J.).  Thus, "the moving party [must] show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay."  Minter v. Prime Equip. Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).

Where a party is diligent in its discovery efforts and nevertheless cannot comply with the scheduling order, the Court has found good cause to modify the scheduling order if the requesting party timely brings forward its request.  For example, in Advanced Optics Elecs., Inc. v. Robins, the Court found that, where the defendant did not conduct discovery or make any good-faith discovery requests, and where the defendant did not make efforts "diligent or otherwise" to conduct discovery, the defendant did not show good cause to modify the scheduling order.  769 F. Supp. 2d at 1313 n.8.  By contrast, in Street v. Curry Bd. Of Cnty. Comm'rs, 2008 WL 2397671 (D.N.M. 2008)(Browning, J.), the Court found that the plaintiff had "shown good cause for a delay in seeking leave to amend," because she "was diligent in pursuing discovery . . . [and] brought to the Court's attention her identification of an additional claim in a timely manner," where she discovered the claim through "documents provided in discovery."  2008 WL 2397671, at *11.  The Court arrived at a similar determination in Abraham v. WPX Production, LLC, 2016 WL 548251 (D.N.M. 2016)(Browning, J.).  There, the Court found good cause to amend a pleading when the plaintiffs had a very short amount of time to amend the pleadings, "even though discovery had only just begun."  2016 WL 548251, at *20.  "The Plaintiffs may not have obtained or reviewed all of the documents that might reveal their conspiracy claim's existence before the deadline to amend passed."  2016 WL 548251, at *20.  Furthermore, the delay was minimal and would not prejudice the defendants. 2016 WL 548251, at *20.

Overall, good cause requires diligence and a conscientious attempt to comply with the Court's scheduling order. When parties have not done so, the Court has not found good cause. In Montoya v. Sheldon, 2012 WL 5353493 (D.N.M. 2012)(Browning, J.), the Court did not find good cause to modify the scheduling order and reopen discovery where the plaintiffs' excuse for not disclosing their expert before the close of discovery was that they thought the case would settle and they would thus not require expert testimony. See 2012 WL 5353493, at *14. The Court noted:

> The [plaintiffs] filed this case on April 15, 2010. Because [Plaintiff] D. Montoya had seen the physician before that date, the fact that the [plaintiffs] are only now bringing the physician forward as a newly identified expert witness, over two years later, and over one and a half years after the deadline to disclose expert witnesses, does not evidence circumstances in which the Court can find excusable neglect nor good cause.

2012 WL 5353493, at *14.

The Tenth Circuit has previously considered the meaning of "excusable neglect" in the context of relief from a final judgment, order, or proceeding under rule 60(b) of the Federal Rules of Civil Procedure. United States v. Timers Preserve, 999 F.2d 452, 454 (10th Cir. 1993). "[T]hree requirements [] must be met when setting aside a default judgment under Rule 60(b): (1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment." United States v. Timers Preserve, 999 F.2d at 454 (citations omitted). In determining whether a party's neglect is excusable, the question

> "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Relevant factors include "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

Jennings v. Rivers, 394 F.3d 850, 856-57 (10th Cir. 2005)(quoting Pioneer, 507 U.S. at 395). In this context, as in others, the Tenth Circuit has stated that the reason for delay is an important, if not the

most important, factor in this analysis.  See Hamilton v. Water Whole Int'l Corp., 302 F. App'x 789, 798 (10th Cir. 2008)(unpublished)(citing United States v. Torres, 372 F.3d 1159, 1163 (10th Cir. 2004)(analyzing the excusable neglect standard in the context of rule 4(b)(4) of the Federal Rules of Appellate Procedure, where the party filed an untimely notice of appeal)).

The relevant factors that the Tenth Circuit used in Jennings v. Rivers with regard to 60(b)(1) have been used to determine whether excusable neglect exists in a number of other contexts.  See Pioneer, 507 U.S. at 395 (discussing application of the excusable neglect standard to Fed. R. Bankr. P.R. 9006(b)(1)); In re Kirkland, 86 F.3d at 175 (concluding that in Pioneer "the Supreme Court relied upon use of the term 'excusable neglect' in a broad sense in Rules 6(b), 13(f), 60(b)(1), and 60(b)(6)," but that the Pioneer factors did not apply to the "good cause" standard under Rule 4(j)); City of Chanute v. Williams Nat. Gas Co., 31 F.3d at 1046 ("Thus, we apply the Pioneer test for 'excusable neglect' under Fed. R. App. P. 4(a)(5)."); United States v. Torres, 372 F.3d at 1162 ("We now likewise conclude that the Supreme Court's construction of 'excusable neglect' in Pioneer also applies to the term 'excusable neglect' as it is used in Federal Rule of Appellate Procedure 4(b)(4).").  Deliberate tactics do not create excusable neglect.  "'Excusable litigation mistakes are not those which were the result of a deliberate and counseled decision by the complaining party . . . .;' rather, they are the 'kinds of mistakes that a party could not have protected against.'"  Thompson v. THI of N.M. at Casa Arena, 2008 WL 5999653, at *18 (D.N.M. 2008)(Browning, J.)(quoting Yapp v. Excel Corp., 186 F.3d 1222 (10th Cir. 1999)).

The Court has applied the Pioneer factors to find that a party demonstrated excusable neglect when its attorney failed to respond to a motion for summary judgment, because its attorney mistakenly thought that the Court's vacating a scheduling order meant there was no deadline for filing responsive pleadings.  See Estate of Anderson v. Denny's, Inc.,  2013 WL 690809, at *13-14

(D.N.M. 2013)(Browning, J.).  The Court noted that the attorney's failure to file a responsive pleading was not unintentional, as the attorneys' misunderstanding of local court rules caused him to think that he did not need to respond.  The Court also noted that the attorney was honest with his reason for not filing, as he did not make up an excuse of catastrophic circumstances precluding him from responding.  The Court recognized that granting the party leave to file a late response was "generous," and that the attorney's failure to respond was "barely excusable."  2013 WL 690809, at *14.  The Court also explained that it is bound by Tenth Circuit precedent requiring the Court to determine motions for summary judgment on their merits, rather than granting such motions for procedural defaults.  See 2013 WL 690809, at *14 (citing Reed v. Bennett, 312 F.3d 1190, 1196 (10th Cir. 2002)).  The Court also found that the prejudice to the party requesting summary judgment was little, as the only costs the party would incur are those it would also have incurred had the attorney timely responded.  See Estate of Anderson v. Denny's, Inc., 2013 WL 690809, at *14-15.

By contrast, the Court has denied a plaintiff's request for an extension of time to name an expert witness against a defendant, when the plaintiff asserted that he had waited to name an expert witness until a second defendant joined the case, because, before the second defendant entered the case, a scheduling order was in effect and the plaintiff should have known that he would need to name an expert witness against the defendant already in the case.  See Scull v. Mgmt. & Training Corp., 2012 WL 1596962, at *8 (D.N.M. 2012)(Browning, J.).  The Court stated that the plaintiff was seeking "relief from his own disregard" for the deadline.  2012 WL 1596962, at *8.  "Despite his knowledge that [Defendant] PNA had yet to enter the case, [Plaintiff] Scull chose to allow the deadline to pass without naming expert witnesses against [Defendant] MTC."  2012 WL 1596962, at *8.  Regarding the defendant who entered the case at a later date, however, the Court allowed the plaintiff an extension of time to name an expert witness, as it "was not unreasonable for Scull to

expect a new deadline to name expert witnesses upon PNA's entrance into the case because he had not yet had the opportunity to engage in discovery against PNA as he had against MTC."  2012 WL 1596962, at *9.  The Court also noted that not naming an expert witness "is a high price to pay for missing a deadline that was arguably unrealistic when it was set," as Scull could not have determined the need for an expert witness until after PNA entered the case.  2012 WL 1596962, at *9.

In Stark-Romero v. Nat'l R.R. Passenger Co (AMTRAK), 275 F.R.D. 544 (D.N.M. 2011)(Browning, J.), the Court found that a lawyer had shown excusable neglect when his reason for missing a scheduling deadline was that soon after his son's wedding, his father-in-law developed a tumor in his chest, the lawyer arranged his father-in-law's medical care, and only after the lawyer returned to his work did he realize that a deadline passed.  See 275 F.R.D. at 549-50.  The Court noted that the lawyer could have avoided missing the deadline had he not left his work until the last minute, just before his son's wedding, but found that the lawyer had demonstrated good faith and missed the deadline because of "life crises," and not his own inadvertence.  275 F.R.D. at 549-50. On the other hand, in Liles v. Washington Tru Solutions, LLC, 2007 WL 2298440 (D.N.M. 2007)(Browning, J.), the Court denied a plaintiff's request for additional time to respond to a defendant's motion for summary judgment, when the plaintiff's only rationale was that its counsel's "family and medical emergencies" -- without further explanation -- precluded the plaintiff from timely responding.  2007 WL 2298440, at *2.

## ANALYSIS

The Court entered Judgment in this case on March 8, 2017, and an Amended judgment on March 14, 2017, correcting a $27.00 clerical error in the restitution ordered.  Under rule 4(b)(1)(A), Roibal-Bradley had until March 22, 2017 -- i.e., fourteen days -- to file a notice of appeal from the Court's Judgment.  Roibal-Bradley, however, filed a notice of appeal on March 28, 2017 -- six days

after the fourteen-day period ended.  Because Roibal-Bradley's appeal is untimely, the Tenth Circuit partially remanded the case for the Court to determine whether to grant her an extension to appeal. Roibal-Bradley now moves, pursuant to rule 4(b)(4), for a ten-day extension of time to appeal.  The Court concludes that Roibal-Bradley has not demonstrated excusable neglect or good cause to extend the deadline, and, thus, the Court denies the Motion.

Roibal-Bradley argues that her failure to comply with rule 4(b)(1)(A)'s time requirement is the result of "excusable neglect."  Motion at 3.  In determining whether Roibal-Bradley's neglect is excusable, the Court must "tak[e] account of all relevant circumstances," Pioneer, 507 U.S. at 395, considering: (i) "the danger of unfair prejudice to the nonmoving party"; (ii) "the length of the delay and its potential impact on judicial proceedings"; (iii) "the reason for the delay, including whether it was within the reasonable control of the movant"; and (iv) "whether the movant acted in good faith," United States v. Vogl, 374 F.3d at 981 (citing United States v. Torres, 372 F.3d at 1162).  Applying these factors, Roibal-Bradley contends that "[t]here is no danger of prejudice to the government in letting the appeal go forward"; "[t]he length of the delay for the filing of the notice of appeal is a few days"; "[t]he reason for the delay is confusion enhanced by the limited nature of the representation assignment and the proceedings in this matter"; and "[t]he movant is acting in good faith."  Motion ¶ 14, at 3.  The United States concedes that the first and second factors favor Roibal-Bradley, i.e., that the "danger of prejudice to the United States is not great," and that the "length of delay was minimal and will not significantly impact judicial proceedings."  Response at 3.  The United States argues, however, that "the most critical factor -- fault -- weighs heavily against Defendant and demands the denial of her motion."  Response at 3 (citing United States v. Torres, 372 F.3d at 1163).  The Court agrees with the United States.

Roibal-Bradley's asserted "reason for the delay," <u>United States v. Vogl</u>, 374 F.3d at 981, is "confusion enhanced by the limited nature of the representation assignment and the proceedings in this matter," Motion ¶ 14, at 3.  To the extent this "confusion" derives from the Court's filing of an Amended Judgment, this reason does not make Roibal-Bradley's neglect excusable.  Under rule 36 of the Federal Rules of Criminal Procedure, a court may, at any time, "correct a clerical error in a judgment, order, or other part of the record[.]"  Rule 36 "allows correction of only non-substantive errors, and does not 'give the court authority to substantially modify a Defendant's sentence.'" <u>United States v. Lonjose</u>, 663 F.3d 1292, 1299 n.7 (10th Cir. 2011)(citation omitted).  <u>See</u> <u>United States v. Spencer</u>, 513 F.3d 490, 491 (5th Cir. 2008)("Rule 36 [is] the appropriate mechanism for amendments that do not substantively alter the sentence announced orally but rather correct errors in written judgments.").  Thus, because a rule 36 correction leaves the sentence intact, such a correction "does not start anew the time for filing a notice of appeal."  <u>United States v. Piggee</u>, 968 F.2d 22, 1992 WL 113749, at *1 (10th Cir. 1992)(unpublished table decision)(citation omitted).  <u>See</u> <u>United States v. Lewis</u>, 921 F.2d at 565 ("[A]n immaterial change in an amended judgment does not enlarge the time for filing an appeal or post-judgment motion.")(citations and internal quotation marks omitted).  Rather, a criminal defendant still has fourteen days to appeal the original judgment or order which the rule 36 correction modifies.  <u>See</u> Fed. R. App. P. 4(b)(1)(A)(i).

Here, the Court entered an Amended Judgment to correct a clerical error in the restitution it ordered in its original Judgment -- an error of $27.00.[3]  The Court corrected only a written, "non-substantive error[]"; it did not materially alter Roibal-Bradley's sentence.  <u>United States v. Lonjose</u>, 663 F.3d at 1299 n.7.  Accordingly, the Court's Amended Judgment did not restart rule 4(b)(1)(A)'s

---

[3]The Amended Judgment's heading states the reason for amendment as "Correction of Sentence for Clerical Mistake (Fed. R. Crim. P. 36)."  Amended Judgment at 1.

fourteen-day filing period, which began to run when the Court filed its original Judgment. See Tenth Circuit Order at 1 (stating that the Amended Judgment "did not restart the time to appeal"). That Roibal-Bradley -- or her counsel -- was "confused" by the applicable filing period does not make her neglect of rule 4(b)(1)(A)'s unambiguous requirements excusable. In United States v. Torres, the Tenth Circuit rejected a similar excusable-neglect argument where the "reason for the delay [] was simply that defense counsel confused the filing deadlines for civil and criminal appeals." 372 F.3d at 1163. The Tenth Circuit concluded that "counsel's misinterpretation of a readily accessible, unambiguous rule cannot be grounds for relief unless 'the word "excusable" is to be read out of the rule.'" United States v. Torres, 372 F.3d at 1163 (brackets omitted)(quoting Prizevoits v. Indiana Bell Tel. Co., 76 F.3d at 134). Likewise, here, Roibal-Bradley -- a former lawyer -- or her counsel easily could have verified the applicable filing deadline by studying rule 4(b)(1)(A)'s clear terms. Such verification was within Roibal-Bradley's "reasonable control," United States v. Vogl, 374 F.3d at 981, and, thus, her "confusion" does not excuse her untimely appeal.

The Motion also attributes the "reason for the delay," United States v. Vogl, 374 F.3d at 981, to "the limited nature of the representation assignment and the proceedings in this matter," Motion ¶ 14, at 3. The Motion explains that Mr. Porter's "understanding" is "that he was appointed for the purposes of representing Ms. Roibal-Bradley in a restitution hearing that was pending and to address a number of post-sentencing pro se motions she had filed." Motion ¶ 7, at 2. This "understanding," however, lacks a sound basis in either the facts or in the applicable law. In its Withdrawal Order, the Court ordered that the Clerk of the Court "appoint CJA counsel for the Defendant," Withdrawal Order at 1, and, in its Appointment Order, the Court appointed "Attorney Barrett (Barry) George Porter for Juanita Roibal-Bradley," Appointment Order (text-only-entry). In neither order did the Court limit Mr. Porter's representation of Roibal-Bradley. Further, as the United States correctly

notes, the Tenth Circuit's rules governing CJA appointments provide, as a "dut[y] of appointed counsel," that, "once counsel is appointed . . . , counsel shall continue representation until the matter, including appeals or review by certiorari . . . is closed; . . . or until the appointment is terminated by court order." CJA Plan ¶ 7(d), at 23-24. Thus, Mr. Porter, as CJA counsel, should "understand" that he has a duty to continue representing Roibal-Bradley in appeals or until the Court terminates his appointment. Mr. Porter's "inability or refusal to read and comprehend the plain language of the [CJA] rules" does not constitute excusable neglect. United States v. Torres, 372 F.3d at 1163 (citations and internal quotation marks omitted).

The Motion explains, moreover, that Mr. Porter and Roibal-Bradley had "no discussion . . . regarding challenging the sentence or the application of the sentencing guidelines," Motion ¶ 8, at 2, and that, upon receiving the Court's Amended Judgment, Roibal-Bradley "notified counsel for the first time of her desire to appeal her sentence," Motion ¶ 9, at 2. At the hearing, however, Ms. Burgess admitted that she and Mr. Porter met with Roibal-Bradley before the Court entered its Amended Judgment, and that, during those meetings, Roibal-Bradley "asked general questions about appeal" as to an ineffective-assistance-of-counsel claim. Tr. at 5:11-15 (Burgess). According to Ms. Burgess, "[t]he specific issue of appealing the sentencing and decisions of this Court were not raised until the 27th," when Roibal-Bradley says she first received the Amended Judgment. Tr. at 5:11-15 (Burgess). If anything, these facts suggest willful action and not excusable neglect. That Roibal-Bradley and counsel met before the fourteen-day-appeal deadline illustrates that it was within their "reasonable control," United States v. Vogl, 374 F.3d at 981, to formulate a timely appeal from the Court's Judgment. Rather than file a direct appeal under rule 4(b)(1)(A), however, they discussed an ineffective-assistance-of-counsel claim, which, it appears, they opted to defer for a 28 U.S.C. § 2255 proceeding. That they glossed over the "specific issue of appealing the sentencing and decisions of

this Court," Tr. at 5:11-15 (Burgess), strongly suggests that they intentionally decided not to file a rule 4(b)(1)(A) appeal, rather than that they neglectfully failed to appeal. Roibal-Bradley's apparent change of heart, upon later receiving the Amended Judgment, does not make her earlier decision -- whether intentional or neglectful -- excusable.

Finally, at the hearing, Ms. Burgess argued that Roibal-Bradley had trouble communicating with counsel from the numerous detention facilities in which she was incarcerated. See Tr. at 6:6-15 (Burgess). That Roibal-Bradley met with counsel before the fourteen-day deadline and discussed an ineffective-assistance-of-counsel appeal belies this argument. Although her movement between detention facilities likely complicated Roibal-Bradley's ability to discuss her rights to appeal with counsel, it did not wholly preclude such discussion. As noted above, Roibal-Bradley managed to discuss some appeal with counsel, despite her movement between facilities; she simply decided not to file a rule 4(b)(1)(A) appeal, likely deciding, instead, to bring an ineffective-assistance-of-counsel claim in a 28 U.S.C. § 2255 proceeding. That decision -- whether intentional or neglectful -- was not excusable for purposes of rule 4(b)(4).

In sum, Roibal-Bradley has not demonstrated excusable neglect, because she is at fault in failing to timely file a notice of appeal. Three excusable-neglect factors favor Roibal-Bradley: (i) the United States would suffer little prejudice from the delay; (ii) the delay was brief; and (iii) there is no evidence that Roibal-Bradley acted in bad faith. See United States v. Vogl, 374 F.3d at 981. Roibal-Bradley, however, is at fault in the delay. See United States v. Vogl, 374 F.3d at 981. First, Roibal-Bradley's apparent "confusion" from the Amended Judgment does not excuse her neglect -- if there was any neglect at all -- because she or her counsel easily could have verified the filing deadline by studying rule 4(b)(1)(A)'s terms. United States v. Torres, 372 F.3d at 1163. Second, and similarly, counsel's inability or refusal to comprehend the CJA rules, which impose a duty of

continuing representation, does not constitute excusable neglect.  See United States v. Torres, 372 F.3d at 1163.  Third, Roibal-Bradley's failure to timely file a rule 4(b)(1)(A) appeal, despite meeting with counsel and discussing appeals, suggests willful action and not excusable neglect.  Finally, that Roibal-Bradley met with counsel before the appeal deadline belies the argument that she had trouble communicating her desire to appeal.  The Tenth Circuit has stressed that "fault in the delay remains a very important factor -- perhaps the most important single factor in determining whether neglect is excusable."  United States v. Torres, 372 F.3d at 1163 (quoting City of Chanute v. Williams Nat. Gas Co., 31 F.3d at 1046)(internal quotation marks omitted).  Accordingly, although three factors favor Roibal-Bradley, the Court concludes that her failure to timely file an appeal was not the result of excusable neglect, because she was at fault in the delay.  See, e.g., United States v. Munoz, 664 F. App'x at 716 (noting that three factors weighed in the defendant's favor, but finding no excusable neglect, because the defendant was at fault); United States v. Torres, 372 F.3d at 1164 (same).

Roibal-Bradley does not argue that her failure to timely file a notice of appeal was the result of "good cause."  Motion at 1-3 (arguing that excusable neglect justifies an extension).  Nonetheless, the Court notes that a good-cause argument would be untenable.  "Good cause may warrant an extension when the defendant demonstrates an untimely filing resulted from a 'situation[] in which there is no fault -- excusable or otherwise.'"  United States v. Munoz, 664 F. App'x at 715 (quoting Bishop v. Corsentino, 371 F.3d at 1207).  The Court's excusable-neglect analysis, supra, illustrates that Roibal-Bradley was at fault in the delay, and, thus, good cause does not warrant an extension.

**IT IS ORDERED** that the Defendant's Motion for an Enlargement of Time to File an Appeal, filed April 24, 2017 (Doc. 101), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Damon P. Martinez
  United States Attorney
Holland S. Kastrin
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff United States of America*

Susan Burgess
Barrett (Barry) George Porter
Burgess and Porter Law, LLC
Albuquerque, New Mexico

*Attorneys for the Defendant*